UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANE A.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. C19-6144-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income ("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred in discounting an examining psychiatrist's opinion, discounting lay statements, and entering step-five findings. (Dkt. # 12 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1973, has an 11th-grade education and a year of auto body tech training, and his past jobs include electrician, construction laborer, painter, and industrial cleaner. AR at 45, 572-74, 604-05. Plaintiff was last gainfully employed in January 2007. *Id*. at 223.

ORDER - 1

In September 2011, Plaintiff applied for SSI, alleging disability as of January 1, 2007. AR at 197-202. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 120-28, 132-43. After the ALJ conducted a hearing in January 2014, the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-89.

The Appeals Council denied Plaintiff's request for review (AR at 1-7), and Plaintiff appealed to the U.S. District Court for the Western District of Washington, which reversed the ALJ's decision and remanded the case for further administrative proceedings. *Id*. at 652-68. A different ALJ held another hearing in February 2018 (*id*. at 563-620),[1] and subsequently issued a decision finding Plaintiff not disabled. *Id*. at 536-54.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the application date.

Step two: Plaintiff has the following severe impairments: right eye vision loss, lumbar degenerative disc disease, and migraines.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: he can stand/walk for four hours in an eight-hour workday. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crawl, balance, and crouch, and can frequently utilize depth perception. He cannot perform work requiring the use of two functioning eyes. He should have no more than occasional exposure to hazards, such as dangerous machinery, but no exposure to unprotected heights. He can perform simple, routine tasks that require no more than occasional contact with the public, co-workers, and supervisors.

Step four: Plaintiff cannot perform past relevant work.

---

[1] At this hearing, Plaintiff amended his alleged onset date to February 29, 2011, which is before the application date and thus before his period of eligibility for SSI. AR at 536. The ALJ stated that the period adjudicated period begins on the application date. *Id*. at 536-37.
[2] 20 C.F.R. § 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

>Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 536-54.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 526-32. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

ORDER - 3

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Discounting the Opinion of Alicia Grattan, M.D.

Dr. Grattan examined Plaintiff in August 2013 and wrote a narrative opinion describing his mental symptoms and limitations. AR at 496-504.

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In the previous decision, the ALJ discounted Dr. Grattan's opinion because it relied on Plaintiff's non-credible self-report, was inconsistent with the record and Plaintiff's hearing testimony, and because Plaintiff did not accurately report his substance use to Dr. Grattan. AR at 26-27. The prior court remand order found this reasoning to be erroneous because: (1) Dr. Grattan's opinion report also contained objective findings; (2) the ALJ did not identify any specific evidence that was inconsistent with Dr. Grattan's conclusions; and (3) the ALJ did not explain how Plaintiff's description of his substance use was inaccurate. *Id*. at 655-58.

In the current decision, the ALJ found that the limitations described in Dr. Grattan's opinion were inconsistent with Plaintiff's activities, namely his driving, taking care of his grandparents as well as his own grandchild, performing yard work, maintaining his daily routine at the methadone clinic, cooking, shopping, and managing his own funds. AR at 550. The ALJ also found that Plaintiff's poor performance on Dr. Grattan's mental status examination was an

anomaly, and the ALJ noted that Plaintiff had declined mental health treatment on multiple occasions for the conditions that Dr. Grattan diagnosed. *Id.*

Plaintiff first[4] argues that the record is devoid of details as to the manner in which he performed all of the activities described by the ALJ, and thus it is not clear whether those activities were in fact inconsistent with the limitations described by Dr. Grattan. This argument is not supported by the record. For example, Plaintiff told Dr. Grattan that caregiving for his grandparents as a "full-time job" even though he was not compensated. AR at 498. Plaintiff told Dr. Grattan that he prepares meals for himself and his grandparents, does all of the grocery shopping and laundry for the household, transports his grandparents to their medical appointments, and goes to the methadone clinic every day. *Id*. at 500. Dr. Grattan herself even acknowledged that Plaintiff had a "fairly regular schedule" of activities. *Id*. at 501. The types of activities Plaintiff reported completing are reasonably inconsistent with Dr. Grattan's opinion that he was limited in his ability to complete simple, repetitive tasks; that he could not complete a normal workweek; or that he could not handle the stress encountered in a typical workplace. *Id.* at 500-01.

Even though, as Plaintiff notes (dkt. # 12 at 6), his grandparents died in 2013 and 2014, Plaintiff also reported caring for his one-year-old granddaughter multiple days per week in 2013 and up to five days per week in the subsequent years until she started attending school, at which point he cared for her only on weekends. *See* AR at 64-66, 584-86. The ALJ identified specific activities that are reasonably inconsistent with the limitations indicated by Dr. Grattan, and the ALJ did not err in discounting Dr. Grattan's opinion on this basis. *See Rollins v. Massanari*, 261

---

[4] Plaintiff's opening also references some of the ALJ's findings that do not pertain to Dr. Grattan's opinion, which Plaintiff claims "bear mentioning" but do not connect to any particular assignment of error. (Dkt. # 12 at 6-9.) To the extent that this discussion mentions miscellaneous findings that do not pertain to Dr. Grattan's opinion, the Court declines to analyze them.

F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Furthermore, as noted by the ALJ, Plaintiff's daily schedule of activities demonstrated that he was more functional than Dr. Grattan's mental status examination would suggest. AR at 550. Thus, although Dr. Grattan reported that Plaintiff struggled to complete simple, repetitive tasks upon examination, the ALJ cited evidence showing that Plaintiff was able to complete many simple and more complex tasks on a regular basis as part of his caregiving responsibilities for his grandparents and granddaughter. *Compare id*. at 499-500 *with id*. at 550. Again, the ALJ did not err in contrasting Dr. Grattan's mental status examination findings with the longitudinal record and finding the results to be anomalous, or in discounting Dr. Grattan's conclusions on this basis.

Lastly, Plaintiff argues that the ALJ erred in discounting Dr. Grattan's opinion because Plaintiff had declined multiple referrals for mental health treatment, contending that the mentally ill are often unwilling to acknowledge their need for treatment, and that he should not be penalized for failing to obtain treatment he could not afford. (Dkt. # 12 at 7-8, 12-13.) Yet the record does not support Plaintiff's arguments: at the administrative hearing, Plaintiff testified that he had not followed up on referrals for mental health treatment because he did not like talking to people but acknowledged that medication would be helpful for his depression. AR at 601-02. Notably, Plaintiff did not deny a need for treatment or cite a lack of access to care. Dr. Grattan opined that Plaintiff's depression was treatable and predicted that it would improve with optimal treatment. *Id*. at 500. Plaintiff has not shown that the ALJ erred in considering whether Plaintiff has engaged in treatment for the conditions described in Dr. Grattan's opinion. *See, e.g.*, *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir.1995) (holding that in

ORDER - 6

assessing medical opinions an ALJ may properly consider the level or frequency of treatment for allegedly disabling conditions over the course of a claimant's history of medical care); *Evans v. Berryhill*, 759 Fed. App'x. 606, 608 (9th Cir. Jan. 7, 2019) (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition"); *Deck v. Colvin*, 588 Fed. Appx. 747, 748 (9th Cir. Dec. 30, 2014) (holding that an ALJ properly accorded less weight to opinions of examining physicians who noted plaintiff's symptoms would improve with engagement in treatment and sobriety).

Because the ALJ provided several valid reasons to discount Dr. Grattan's opinion, the Court affirms the ALJ's assessment of this evidence.

### B.     The ALJ Did Not Err in Discounting Lay Statements

Plaintiff's fiancée Mystie Wood, grandparents Louise and Harry Engrave, and daughter submitted statements describing his symptoms and limitations. AR at 284-87, 290-94, 314-17. The ALJ summarized these statements and explained that she gave little weight to the statements of Ms. Wood and Plaintiff's daughter because the statements were inconsistent with the medical evidence and/or Plaintiff's activities, and only some weight to the Engraves' statement because some of the limitations described were inconsistent with the medical evidence and Plaintiff's lack of treatment. *Id*. at 551-52.

An ALJ's reasons to discount a lay statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Court will address Plaintiff's challenges to each lay statement in turn.

#### 1.     Ms. Wood

Plaintiff challenges the ALJ's assessment of Ms. Wood's statement on the grounds that the ALJ misstated his testimony regarding yard work (dkt. # 12 at 13), but the ALJ did not cite to

ORDER - 7

Plaintiff's testimony regarding yard work when assessing Ms. Wood's statement. The ALJ noted that Ms. Wood wrote that the last time Plaintiff tried to perform yard work, he ended up in the emergency room (AR at 287), and the ALJ cited the emergency room records that pertain to this incident. *Id*. at 551 (citing *id*. at 882-974). The ALJ emphasized that the emergency room records contained a physical examination that was within normal limits. *Id*. at 551 (citing *id*. at 897-99). Plaintiff has not identified a misstatement regarding yard work in the ALJ's assessment of Ms. Wood's statement.

Plaintiff also argues that the ALJ erred in discounting Ms. Wood's statement due to his lack of treatment, given that he could not afford further treatment. (Dkt. # 12 at 13.) The ALJ did not, however, cite Plaintiff's lack of treatment as a reason to discount Ms. Wood's statement. AR at 550-51.

Lastly, Plaintiff suggests that the ALJ erred in discounting Ms. Wood's statement in light of his activities, arguing that there is insufficient information about his activities to show that they were inconsistent with Ms. Wood's statement. (Dkt. # 12 at 13-14.) As explained *supra*, the record contains sufficient description of Plaintiff's activities to find them reasonably inconsistent with Ms. Wood's description of Plaintiff's disabling pain.

Because the ALJ provided germane reasons to discount Ms. Wood's statement, the Court affirms this portion of the ALJ's decision. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (finding a claimant's inconsistent activities to be a germane reason to discount a lay statement); *Bayliss*, 427 F.3d at 1218 (finding inconsistent medical evidence to be a germane reason to discount a lay statement).

### 2. The Engraves

The ALJ discounted the Engraves' statement as inconsistent with the medical evidence

showing normal physical examinations and the lack of treatment for Plaintiff's lumps in his throat. AR at 552 (citing *id*. at 895-99). Plaintiff contends that the ALJ's reasoning uses "the lack of access to medical treatment to [his] disadvantage[.]" (Dkt. # 12 at 15.) The ALJ did note that Plaintiff had not sought any treatment for the lumps in his throat that caused swallowing difficulties (AR at 552); when asked at the administrative hearing why he had not sought treatment, he said he was going to call his doctor soon. *Id*. at 586-87. Plaintiff did not cite a lack of access to care, which undermines Plaintiff's argument to the Court.

Furthermore, the ALJ noted that even if Plaintiff had sought treatment for his throat lumps, swallowing difficulties would not cause workplace limitations. AR at 552. Plaintiff has not challenged this portion of the ALJ's decision, or the ALJ's finding that the Engraves' statement is inconsistent with the objective medical evidence. Accordingly, the Court finds that the ALJ provided germane reasons to discount the Engraves' statement and affirms the ALJ's assessment. *See Bayliss*, 427 F.3d at 1218.

### 3. Plaintiff's Daughter

The ALJ discounted Plaintiff's daughter's statement, noting that although Plaintiff's daughter reported that Plaintiff could not lift his 25-pound granddaughter (AR at 316), Plaintiff reported caring for his granddaughter for hours at a time, which would necessitate occasionally picking her up. *Id*. at 552. The ALJ also cited Plaintiff's daily schedule of activities as inconsistent with Plaintiff's daughter's statement that Plaintiff could only lay on his back and watch television (*id*. at 316). *Id*. at 552.

As described above, the record contains sufficient detail regarding Plaintiff's activities to support the ALJ's finding that his activities were inconsistent with the limitations described in

Plaintiff's daughter's statement. Thus, the ALJ provided a germane reason to discount Plaintiff's daughter's statement and the Court affirms the ALJ's assessment.

Because Plaintiff has failed to show that the ALJ erred in discounting the lay evidence, the Court affirms the ALJ's assessment of the lay statements.

### C.     The ALJ Did Not Err at Step Five

Plaintiff raises several challenges to the ALJ's findings at step five. (Dkt. # 12 at 16-18.) At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

First, Plaintiff argues that the ALJ erred in failing to include the mental conditions diagnosed by Dr. Grattan at step two and all subsequent steps in the sequential evaluation. (Dkt. # 12 at 16.) But as explained *supra*, the ALJ did not err in discounting Dr. Grattan's opinion, and therefore did not err in excluding the limitations she described from the RFC assessment. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Second, Plaintiff argues that the ALJ erred in relying on vocational expert ("VE") testimony that deviates from the Dictionary of Occupational Titles ("DOT") without sufficient explanation to support doing so. (Dkt. # 12 at 17-18.) The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). If a VE's testimony conflicts with the DOT, the ALJ must determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

In this case, Plaintiff notes that the ALJ's RFC assessment limits Plaintiff to standing/walking four hours per workday, and yet the VE testified that Plaintiff could perform several light jobs, albeit with a 50% erosion of job numbers due to the reduced standing/walking.

*See* AR at 553-54, 608, 610-11. The VE testified that his opinion about 50% erosion was based on his onsite job duties performed as a vocational counselor, as well as occupational research he performs. *See id*. at 610-11.

Plaintiff contends that the VE failed to provide a "rational explanation" of why a person who is limited to four hours of standing/walking per workday could perform a light-level job (dkt. # 12 at 18), but the VE did provide an explanation. The VE stated that based on his experience and research, about 50% of the step-five jobs permit an employee to perform job tasks while seated, thus accommodating the standing/walking limitation in the ALJ's RFC assessment. AR at 608, 610-11. Even if the VE's experience and research is based primarily on Washington state jobs, Plaintiff has not pointed to any evidence suggesting that the VE's conclusions would not apply equally to national jobs. (Dkt. # 17 at 7.) This is a sufficient explanation to support the ALJ's reliance on the VE's testimony. *See Massachi*, 486 F.3d at 1152-54 & n.19; *Johnson*, 60 F.3d at 1435-36.

Plaintiff also contends that the VE failed to explain how he could perform the jobs identified at step five with only one eye. (Dkt. # 12 at 18.) But, again, the VE did explain this testimony: he noted that the ALJ found that Plaintiff could utilize depth perception no more than frequently, and could not perform any job requiring the use of two functioning eyes (AR at 542), and that the DOT did not require more than frequent depth perception for any of the step-five jobs. *Id*. at 611-13. The VE also testified that the step-five jobs did not require activities that would create hazards with compromised vision, such as working around dangerous machinery. *Id*. Plaintiff has not shown that the VE's explanation on this issue was insufficient.

Lastly, Plaintiff notes that the ALJ's RFC assessment includes a limitation to occasional contact with the public, co-workers, and supervisors, which "is a significant limitation which is

ORDER - 11

not addressed in the decision." (Dkt. # 12 at 18.) But this limitation was included in the RFC assessment and the VE hypothetical (AR at 542, 605, 608), and it is unclear what Plaintiff argues needed to be addressed further. The VE testified that Plaintiff could perform the step-five jobs even with that social limitation, and this testimony is substantial evidence to support the ALJ's step-five findings.

Because Plaintiff has failed to establish the existence of harmful legal error in the ALJ's step-five findings, the Court affirms this portion of the ALJ's decision.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 26th day of August, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12